**Johnny DILL, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–84–174–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 30, 1985.

Pat McGuire, Corpus Christie, for appellant.

Grant Jones, Dist. Atty., Corpus Christie, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Appellant was indicted for burglary of a habitation. The State also alleged two prior felony convictions. Trial was by a jury, which convicted appellant and sentenced him to 40 years confinement in the Texas Department of Corrections. We reverse the judgment of conviction.

We are confronted with five briefs, three from appellant and two from the State. After appellant's counsel on appeal submitted a brief, appellant filed a "Supplement And Amended Pro Se Brief" which incorporated his counsel's grounds of error and added some of his own. Counsel for appellant then filed a supplemental brief including appellant's grounds of error. Reference to specific grounds of error will be by the number assigned to same in the briefs submitted by appellant's counsel; all grounds will be considered.

In the instant case, officers of the Corpus Christi Police Department had an arrest warrant for James Carr for burglary. Sergeant David Torres testified that Carr was "highly sought" and that he had information that Carr had been "hanging around" with appellant. There was also information that Kenneth Schultz was an acquaintance of James Carr.

In their search for Carr, the police spotted Schultz' car at the International Motel. The police determined that Schultz had registered under some kind of alias and set up surveillance on the motel in the late afternoon or evening of October 18, 1983. After about 20 to 40 minutes, appellant arrived at the motel with a Latin male, later identified as Robert Salazar, and a woman Officer Torres recognized as Carla Honeycutt.

Officer Torres testified that he knew at that time that appellant Johnny Dill had an extensive criminal record involving crimes against property, especially burglary. Torres testified there was also a report that appellant was a heroin addict. Torres also testified that he had had prior contact with Schultz and that Schultz also had an extensive record of crimes against property. Torres testified that he had heard from other detectives that Carla Honeycutt was a drug addict and, though not a burglar herself, was a fence for "some of these guys."

Appellant, Salazar and Honeycutt got out of appellant's rent-a-klunker and went inside the motel room. Five or ten minutes later, appellant came out and "looked around real suspicious, like he was looking for some kind of police car or something," then appellant and Salazar exited the motel room carrying a large portable television set toward their car. Upon seeing this, Torres concluded there was a theft or burglary in progress.

Appellant and Salazar were ordered to place their hands on their car. Torres then entered the open door of the motel room where he found Honeycutt and Schultz. Torres also found that the motel television was in the motel room.

Meanwhile, other officers determined that the serial number had been removed from the television set carried out by appellant and Salazar, and inspection of the trunk revealed a camera and microwave

oven. Appellant does not challenge the sufficiency of the evidence to support the jury's verdict that earlier that same day he burglarized a residence, taking a 19″ portable Mitsubishi television set, a camera, a microwave oven and other items; however, Officer Torres testified that they were unaware of this burglary at the time appellant was taken into custody.

Because neither appellant nor any of his associates would claim or explain possession of the television set or other property, and because the serial number was missing or scratched off, everyone went downtown. Upon arrival at the stationhouse, Torres immediately checked the recent burglary reports and determined that the property recovered was indeed stolen.

In his first ground of error, appellant alleges the trial court erred in overruling his motion to suppress and then admitting various items discovered as the result of what he alleges was an illegal arrest. We agree and sustain appellant's first ground of error in part, but only so far as the seizure is characterized as a seizure from his arrest. However, we find the television set was admissible on other grounds.

■ All arrests and searches made without valid warrants are unreasonable unless shown to be within one of the exceptions to the rule that an arrest or a search must rest upon a valid warrant. A valid exception must exist, and the burden is on the State to show that a warrantless arrest or search comes within some exception to this general rule of exceptions. *Wilson v. State,* 621 S.W.2d 799, 803–04 (Tex.Crim. App.1981). A recognized exception applicable to the instant case is that a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977). We therefore examine the record to determine whether there is probable cause to believe that appellant committed an offense.

"[P]robable cause to arrest exists where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime." *Jones v. State,* 565 S.W.2d 934, 936 (Tex.Crim.App.1978).

In the instant case, Officer Torres knew that appellant was a "seasoned criminal" with a criminal record involving burglary and crimes against property. Torres also had information appellant was a heroin addict. Although the record is silent as to the source of this bit of data, his testimony at the suppression hearing was not contradicted, and it is common knowledge that heroin addicts often turn to a life of crime, committing thefts and burglaries, to support their habits.

■ Although each determination of probable cause must be determined on its own facts, the case of *Hernandez v. State,* 523 S.W.2d 410 (Tex.Crim.App.1975), has some similarities to the instant case. In *Hernandez,* the Court held that an officer was justified in detaining for further investigation a known burglar and narcotic addict observed parked in front of a motel with a console television partly wrapped in a blanket in that defendant's automobile. *Id.* at 412.

In *Hernandez,* there is no indication the officer thought the television set was stolen from the motel where the car was parked. Still, the Court found it was reasonable for the officer to believe that criminal activity was occurring. *Id.* We believe that the facts in the instant case are sufficient to give rise to probable cause to arrest appellant.[1]

■ As previously set out, appellant was removing the television from the motel room. Officer Torres testified that thefts of television sets from motels were very

---

1. Compare and contrast *Johnson v. State,* 658 S.W.2d 623 (Tex.Crim.App.1983) (pickup loaded with furniture at 5:00 a.m.).

common in Corpus Christi; he further testified that he had actually investigated such thefts on various occasions.

We conclude that, when Johnny Dill, a known burglar and suspected heroin addict, exited the International Motel carrying a large portable television set from a room registered under a false name [2] and false address, Officer Torres could reasonably conclude a theft or burglary was being committed.[3]

We feel it is important to explain what we do not hold. We are not here dealing with the arrest of the hypothetical citizen innocently transferring possessions from his motel room to his automobile. The test in *Jones* is couched in terms of a *particular person*, in this instance that particular person is Johnny Dill, a known burglar and suspected addict.

We quote from *Hernandez:*

So there will be no misunderstanding, we are not holding that a police officer has the right to stop for investigation any person that he knows to have once been involved in criminal activities or anyone who associates with such a person. This court will not, nor should any court, tolerate unfounded detention or harassment of citizens. Such an encroachment on freedom as here occurred will only be allowed where the totality of the circumstances can justify a reasonable suspicion of wrongdoing.

523 S.W.2d at 412.

Although the officers had probable cause to arrest appellant for the suspected theft of the motel room's television, we hold that the continued arrest was illegal for any probable cause evaporated or was negated when Officer Torres discovered the motel's television was still in the room.

At the suppression hearing the State argued that when the officers discovered there was no serial number on the television set, they had further probable cause to arrest appellant. In the words of Officer Torres:

"Okay, well, if we don't find a serial number, it's been removed or altered, we can presume it's stolen under section—I believe under the penal code."

District Attorney Jones argued at the close of the hearing as follows:

Once they determined that the television set was not from the room, they did not arrest Johnny Dill for theft, however, the television set had it's serial number removed, and it is a crime to tamper with serial numbers on properties of that kind and he was arrested for that crime.

Texas Penal Code Ann. § 31.11 (Vernon Supp.1985) provides in pertinent part as follows:

§ 31.11 Tampering with Identification Numbers

(a) A person commits an offense if, without the effective consent of the owner:

(1) he knowingly or intentionally removes, alters, or obliterates the serial number or other permanent identification marking on tangible personal property other than a motor vehicle; or

(2) he possesses tangible personal property other than a motor vehicle knowing that the serial number or other permanent identification marking has been removed, altered, or obliterated.

\* \* \* \* \* \*

(c) Property involved in a violation of this section may be treated as stolen for purposes of custody and disposition of the property.

The district attorney was, of course, correct that tampering with and removing the serial number from the television set was itself an offense for which appellant could have been arrested; however, there must

---

**2.** Though not an offense to register at a motel under an assumed name, concealment of identity is a factor to be considered. *See Marko v. State*, 144 Tex.Cr.R. 509, 164 S.W.2d 690, 694 (Tex.Crim.App.1942).

**3.** Sergeant Torres conceded it is not against the law to sign up in a room under a different name and different address, but indicated this aroused suspicions that the occupants were lying so that, after stealing the television, they could not be found.

be probable cause to believe appellant committed the offense.

■ The record is not well developed concerning probable cause to arrest for a violation of TEX.PENAL CODE ANN. § 31.11. At the hearing, the State concerned itself mainly with evidence to show probable cause to arrest for theft of the television, not tampering with its identification number. Nevertheless, the State has the burden of showing there was probable cause for a warrantless arrest. *Roberts v. State*, 545 S.W.2d 157, 158 (Tex.Crim.App. 1977).

■ On appeal, the State attempts to make much of the fact that appellant offered no explanation for his possession of the property. The State suggests, as the district attorney argued, that appellant was not "immediately" arrested for theft, and that his silence was probable cause to arrest for violating § 31.11.

Such an assertion is without merit. Officer Torres testified that he and the other officers descended upon appellant with guns drawn and shouts of "freeze." No rational person should argue to this Court that appellant was not under arrest at that moment, for no reasonable person should believe he was free to leave or dare to do so. The arrest was complete even before appellant was held with his hands on his car, and we so hold.

A citizen is under no duty to make explanations under these circumstances; the arrest was complete and *Miranda* rights most certainly attached. When considered in light of the facts, appellant's silence can not be bootstrapped into a finding of probable cause.

■ We have held that the police officers had probable cause, at least temporarily, to arrest appellant for burglary; thus, the officers were entitled to seize the television set and examine it. Where the original arrest is lawful, the arresting officer is also authorized to make an additional arrest for any other offense unexpectedly discovered during the course of investiga-

tion. *Byrd v. State*, 447 S.W.2d 936, 937 (Tex.Crim.App.1969).

■ Although § 31.11(c) provides that property may be treated as stolen, we believe there must still be probable cause to believe there has been a violation of the section. See *Byrd*.

■ We conclude that the issue in the case is whether possession by appellant of the television set with no serial number was sufficient probable cause to believe appellant had violated § 31.11. We hold that it was not.

■ Probable cause to arrest for § 31.-11 must be based on a reasonable belief the actor tampered with the serial number or possessed the property knowing the serial number had been tampered with *without the effective consent of the owner.*

Officer Torres testified as follows:

Well, you know, it still was in my mind to investigate the moving of the TV from the motel room. Yes, sir, I still wanted to investigate why that TV was being removed from there. If it didn't come from that—from that particular room, then I wanted to find out the circumstances about it.

\* \* \* \* \* \*

Possibly [stolen] from the hotel but not from—not from that room anymore.

We conclude that, after discovering the television set was not stolen from the room where Officer Torres saw it removed, any further suspicions must be relegated to the category of an inarticulate hunch. We can find nothing in the record to support a reasonable belief that appellant himself had violated Texas Penal Code Ann. § 31.-11 after Officer Torres found the motel's television set remained in the room.

■ Contrary to one officer's opinion, it is not a per se violation to possess property of this sort that does not have a serial number. Unlike § 31.11(b), § 31.11(a) allows an owner to tamper with a serial number or give his consent for someone else to do so.

Since we are not dealing with oil field equipment, *see* § 31.11(b)(1) & (2), there must be some showing that appellant either was not the owner or else acted without the owner's consent. Neither is established in this record.[4]

We are left, then, with two questions. Is possession of a television set by a known burglar and suspected addict, in the company of others of similar ilk, probable cause to believe the set was stolen? Is possession of a television set with no serial number probable cause to believe the one in possession removed the serial number without the consent of the owner or possessed it knowing the serial number had been removed without the consent of the owner? We answer no to both questions.

We find however that since the T.V. set seized from the appellant and the erased identification number on the set was discovered pursuant to the original legal detention of appellant and since appellant did not claim the T.V. set and no other person at the scene claimed the T.V. set, it was proper for the police to retain custody of the set to determine its rightful owner and to investigate whether it was in fact stolen, albeit the police had no reason to further detain appellant once the T.V. in the room was found to be where it was suppose to be. We find that the police would be remiss in their duty to return the set to appellant who did not claim the set or to anyone else (no one else claimed the set) or to just leave the set in the parking lot in light of the fact that the serial number was obliterated and possibly stolen. Under the circumstances, the police had a right to seize the set, investigate and find the rightful owner or claimant, and to investigate whether the T.V. set was in fact stolen or the subject of a violation of § 31.11. The items seized from the trunk were not in plain view and were seized after there was no further reason to detain appellant and should not have been admit-

ted. Appellant's first ground of error is sustained in part and overruled in part.

By his second ground of error, appellant complains the trial court excluded evidence beneficial to his contentions and unduly restricted cross-examination of the State's identification witness.

The ruling complained of occurred at the hearing on the motion to suppress—not at trial. Appellant's argument is that the court provided itself with an insufficient basis upon which to decide whether the testimony of the eyewitness should be suppressed and therefore violated his due process rights to counsel.

Appellant's counsel stated to the court that:

> The motion deals with—with the identification spread and—of course, no one is going to testify that—that the—the spread was—that they in any way influenced the spread. I'm trying to show, your Honor, that this man did not have an opportunity to, in fact, identify anybody.

The hearing on the motion to suppress was not an abbreviated affair. The record reflects that appellant's counsel was allowed considerable latitude in interrogating the witness at the pretrial hearing and that he was permitted unlimited cross-examination at the trial. The record fails to reflect an abuse of discretion. *Henriksen v. State*, 500 S.W.2d 491, 495 (Tex.Crim.App.1973). Appellant's second ground of error is overruled.

Appellant's third ground of error is a complaint the court erred in permitting the State to bolster its identification witness. Appellant made no objection to the testimony he now complains of, thus the error, if any, is waived. Appellant's third ground of error is overruled.

Appellant's fourth ground of error is a complaint that an officer was allowed to testify before the jury that appellant offered no explanation for his possession of

4. Though appellant was characterized as a known burglar, Officer Torres testified that he

did not discover the property was stolen until he returned to the station house.

the property and that appellant said he "wasn't saying anything."

The State renews its argument that appellant was not under arrest at the time of the statement, but also correctly points out there was no objection. Absent an objection, the error is waived.

Appellant concedes there was no objection, but argues that violation of such a fundamental constitutional guarantee as the right to silence is so harmful that no instruction could cure the harm and the failure to timely object should not waive the error. The Court of Criminal Appeals has stated that a failure to make a timely objection may waive even a constitutional ground. *Boulware v. State,* 542 S.W.2d 677, 683 (Tex.Crim.App.1976), *reh'g denied,* 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). In that opinion the court was discussing a matter of procedure, i.e. selection of jurors under *Witherspoon;* nevertheless, for whatever reason, the Court of Criminal Appeals wrote: "A failure to timely object waives any error in the *admission of evidence* and presents nothing for review." *Id.* (emphasis added). Appellant's fourth ground of error is overruled.

By his fifth ground of error appellant alleges that the court erred in failing to exclude testimony taken prior to appellant's plea to the indictment at the punishment phase of the trial.

After the State had put on all of its evidence to support the enhancement counts of the indictment, the State's attorney realized he had failed to read the enhancement allegations to the jury and requested permission from the court to do so.

Appellant objected and asked for a mistrial. The trial court was correct in overruling this motion, and permitting the State's tardy reading of the indictment. *Castillo v. State,* 530 S.W.2d 952 (Tex. Crim.App.1976). However, appellant's counsel also requested "and/or to instruct the jury to totally disregard that testimony which they heard coming from this witness, Mr. Fernandez." This objection, which the court overruled, was sufficient to point out the proper method to reintroduce the testi-

mony. *Welch v. State,* 645 S.W.2d 284, 285 (Tex.Crim.App.1983).

After the State read the indictment, the assistant district attorney stated:

Mr. Montelongo: Your Honor, at this time the State has presented its evidence, and I would just like to inform the Court and the jury that the information that has been presented in the proceedings and testimony from Mr. Fernandez be applied to this charge that has just been read to the jury.

Both sides rested and closed with no further testimony.

The State now alleges there was no error because the above statement by Mr. Montelongo was a reintroduction of the evidence. We disagree. Mr. Montelongo's pronouncement from the bar was not evidence and was not a reintroduction. The proper procedure to place the evidence before the jury was by an agreement with appellant to stipulate or else by repetition of the testimony. *Welch.* Neither occurred.

The State also argues the error was waived, citing *Castillo.* We disagree, for here, as the court wrote in *Welch:* "Unlike *Castillo v. State,* also relied on by the State, appellant did not merely ask for a mistrial: he specifically asked that the evidence heard before the plea be removed from the jury's consideration." *Welch,* 645 S.W.2d at 285.

■ The court erred in not instructing the jury to disregard, and the error was obviously harmful to appellant as this included all the testimony before the jury at the punishment stage. We hold such error requires reversal. .

By his sixth ground of error, appellant alleges the trial is void because appellant entered no plea to the enhancement portion of the indictment and none was entered for him. Both the appellant and State proceed upon the assumption that the reading of the enhancement portion and a stated plea at the punishment stage is mandatory unless waived (thus giving the appellant the same rights as are afforded to him under

the rules and case law with reference to the reading of the indictment and plea of not guilty).

In *Peltier v. State*, 626 S.W.2d 30 (Tex. Crim.App.1981), the judgment was reversed "for the simple but basic reason that the State and accused never joined issue before the jury." *Id.* In that case, at the guilt/innocence phase, the State failed to read the indictment and the defendants failed to enter a plea in the presence of the jury.

In the instant case, the enhancement portion of the indictment was eventually read to the jury; however, the record reflects that appellant never entered a plea to the enhancement portion and was never asked to plea before the jury after the enhancement portion was read. We also read *Peltier* and cases cited therein to stand for the proposition that the right may be waived.

> That it [the right of every defendant to have the charge read against him and to have his plea entered therein] can be waived is well established, but such a waiver cannot be inferred; but in a case where the statute has been disregarded the burden rests upon the state to show such conduct and acts upon the part of the defendant as may, in fairness, be treated and regarded as a waiver....

*Id.* at 31 (quoting *Essary v. State*, 53 Tex. Cr.R. 596, 111 S.W. 927, 930–31 (Tex.Crim. App.1908).

The State argues the record demonstrates a waiver. The following discussion occurred during the proceedings and outside the presence of the jury:

MR. MONTELONGO: Just since we're on the record right here, we have made this—we have presumed up to this point that the Defendant has pleaded not true. Would that assumption like to be corrected or changed?

MR. RODRIGUEZ: You can just leave it there, I don't care, if you want to get out.

MR. MONTELONGO: I'm asking the question: To this point, this Court has pretty much assumed that the Defendant has pleaded not true. Would the Defendant like to correct that assumption?

MR. RODRIGUEZ: No, we are pleading not true. No, the thing is I'm—I'm just saying that—our objection, just for the record, is that if the rules and the cases hold that he has to plead—

MR. MONTELONGO: Okay.

MR. RODRIGUEZ: —that he did not plead.

THE COURT: Very well. Court notes your objection.

Defense counsel had already objected to the court's charge on punishment complaining of that portion wherein it described appellant as having plead "not true" to the enhancement paragraphs. Defense counsel was obviously insisting on the rights that might be afforded his client under the rules and law pertaining to the plea of not true. While such actions may not constitute a waiver of the requirement of a plea of not guilty to join the issue, we do not think *Peltier* and the cases cited therein apply to the plea of not true so that a waiver of that type required by *Peltier* and *Essary* would therefore be required as to the plea of not true.

The core of *Peltier* and the cases cited therein is the question of the joinder of the issue; that is, the reading of the accusation by the State and the defendant's plea of not guilty advise the jury of what the charge is and the plea of not guilty joins or creates the issue before the jury, i.e. is he or is he not guilty? The mandate that "... if a plea of not guilty is relied upon, it shall also be stated." Article 36.01 V.A.C.C.P. is relied upon in *Peltier* as is Article 27.01 V.A.C.C.P. and Article 27.02(4) V.A.C.C.P.

> "Moreover, '[t]he primary pleading in a criminal action on the part of the State is the indictment ...,' Article 27.01, V.A.C. C.P., and included in pleadings and motions available to the accused is a plea of not guilty, Article 27.02(4), V.A.C.C.P.[2]"

*Peltier v. State*, 626 S.W.2d at 31 (footnote omitted.)

▮ The enhancement portions of the indictment relate to punishment not to the central issue of guilt or innocence. Article

27.01 V.A.C.C.P. does not refer to a plea of not true. Article 36.01 V.A.C.C.P. does not require the statement of a plea of not true. Article 37.07 V.A.C.C.P. relating to the separate hearing on proper punishment does not require the plea of not true to be stated. We hold that the stated reason for the required reading of the indictment and stated plea of not guilty under Peltier does not extend to the statement of "not true" when the enhancement portion of the indictment is read to the jury under the particular fact circumstances of this case.[5] Appellant's sixth ground of error is overruled.

Appellant's seventh ground of error is another complaint of bolstering. Again there was no objection, therefore the complaint is waived.

 Appellant's eighth ground of error complains of improper jury argument. The complained of statement appears to be invited (the State's response to defense counsel's argument about the whereabouts and results of cases as to other persons whose alleged involvement in the instant case was brought out during the trial including some matters outside the record). The error, if any, was cured by the court's instruction to the jury to disregard the prosecutor's statement. Appellant's eighth ground of error is overruled.

Appellant's ninth ground of error concerns admissibility of a pen pack introduced during the purported penalty stage. In that the alleged defect is not likely to be repeated in the event of retrial, and in light of our finding that the purported punishment evidence was not properly before the jury, we need not consider this matter.

The judgment of the trial court is REVERSED and REMANDED for a new trial.

NYE, Chief Justice, concurring.

I agree with the majority opinion that the officers had probable cause to arrest appellant for suspected theft, but I disagree with the majority to the extent that probable cause "evaporated" when Officer Torres discovered that the television, belonging to the motel, was still in the room. I believe that the original arrest for theft of the television was lawful and the officers were entitled to seize and examine it. Because the original arrest was lawful, the police were also authorized to make an additional arrest for any other offense unexpectedly discovered during the course of investigation. *Byrd v. State*, 447 S.W.2d 936, 937 (Tex.Crim.App.1969). Here, the police officers knew appellant had committed prior burglaries and was a known criminal. They had information that he was a heroin addict. The person who registered the motel room from which appellant was exiting had used an alias and a nonexistent address. Appellant was in the company of a known fence. The officers saw appellant leaving the motel room with a television set. Officer Kemp testified that as they came out of the motel room, he saw them "look around real suspicious, like he was looking for some kind of police car or something,...."

I would hold that probable cause had not "evaporated" when the officers realized that the appellant had not stolen the television set from the room he had just exited. Upon further investigation, the police also discovered that the serial number on the television had been removed. Those facts which constituted probable cause to believe that a theft had been in progress could certainly be carried over to found a reasonable suspicion that another crime had been committed upon their discovery that the television set which appellant furtively carried from the motel room was missing a serial number. The officers were in a situation in which, of necessity, they were required to act quickly. Even though their original suspicion that appellant was in the process of stealing a television from room 108 did not prove correct, further investiga-

---

5. We note that in *Warren v. State*, 693 S.W.2d 414 (Tex.Crim.App.1985) (not yet reported), the Texas Court of Criminal Appeals holds Art. 36.01 V.A.C.C.P. applicable to the penalty state. However in *Warren*, the enhancement portion was not read to the jury and the charge and record made no reference to the appellant's plea. We distinguish *Warren* on the facts. (Here, the enhancement portion was read and the charge indicated defendant pled not true.)

tion, revealing a missing serial number on the television, in addition to all of the other circumstances which originally caused their suspicion were enough to constitute probable cause. The missing serial number gave police just cause to investigate further. The investigation eventually led to the discovery of various stolen items as part of an inventory search of the trunk. It is my opinion that the items found as a result of this search were properly admitted into evidence.

I agree that, by appellant's fifth ground of error, the case must be reversed. Therefore, I concur in the result.