NO. 07-07-0009-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 26, 2007

_____

DANIEL GUERRERO,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 72ND DISTRICT COURT OF CROSBY COUNTY;

NO. 2940; HON. RUBEN G. REYES, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Daniel Guerrero was convicted of murder. In appealing that conviction, he contends the evidence is legally and factually insufficient to support it. We disagree and affirm the judgment.

*Background*

On the night of January 9, 2005, around 9:00 p.m., Victoria Barron heard a knock at her front door. Barron as well as her cousin JoAnn Mendoza and Mendoza's boyfriend

Abel Reyna walked out the back door and proceeded around the side of the house to see who was there. A man later identified as appellant asked if a person named LaLa Robledo lived there. Barron replied that he did not. Barron and appellant shook hands and continued a conversation in Spanish. Appellant then left, and the others went back inside the house.

Mendoza and Reyna later left to get something to eat. While they were gone, there was another knock at the door. Barron went to the back porch to speak with the person. Barron's boyfriend Ricky Perez also went outside after a short time and observed Barron in conversation with appellant. Perez became jealous and told appellant to leave which he did. At approximately 9:45 p.m., Mendoza and Reyna returned to the house to let Mendoza's children out, and they noticed Barron talking outside to appellant. Reyna believed Barron and appellant were having an argument. However, appellant left at that time.

Later, Mendoza and Reyna returned from the store and re-entered the house. There was then another knock at the back door. Barron went out alone to see who it was and closed the door behind her. After some period of time, when Barron did not return, the others went to check on her and found her lying in blood in the back yard. She had been stabbed with a knife which had been driven through her skull. The knife handle had been broken off and was never recovered. Barron later died from the knife having severed her brain stem and vertebral arteries.

After receiving a description of appellant, law enforcement persons arrested him a short time later walking down the highway about one and one-half miles from the scene.

He had blood from a cut on his finger and stains on his clothing that appeared to be from blood. He was also determined to be intoxicated.

*Legal Sufficiency*

The standard by which we review the legal sufficiency of the evidence is well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The mere presence of an accused at or near the scene of a crime standing alone is insufficient to establish his guilt. *King v. State,* 638 S.W.2d 903, 904 (Tex. Crim. App. 1982); *Robertson v. State,* 888 S.W.2d 493, 495 (Tex. App.–Amarillo 1994, pet. ref'd). However, it is a circumstance from which a factfinder may draw an inference of guilt when combined with other facts. *Mabra v. State,* 997 S.W.2d 770, 774 (Tex. App.–Amarillo 1999, pet. ref'd). At bar, no witness saw the person who knocked at the back door the last time before Barron was stabbed. There is only evidence that appellant was at the house more than once earlier in the evening. Furthermore, DNA evidence was not able to confirm that appellant's blood was on Barron or that her blood was on him.

Nevertheless, there was some other evidence of appellant's guilt in that no one had observed appellant bleeding (particularly when he shook hands with Barron) when he had been at the house earlier, and the medical examiner testified that, because of the placement and force of the stabbing, the perpetrator could have sustained a cut to the hand or fingers. Furthermore, two fellow jail inmates testified they had heard appellant state that he had thrown the knife handle and one of the two shirts he was wearing into a garbage can or dumpster.

3

This evidence, taken in the light most favorable to the verdict, is sufficient to allow a rational factfinder to determine beyond a reasonable doubt that appellant committed the offense. Thus, the evidence is legally sufficient to sustain the verdict.

*Factual Sufficiency*

The more difficult question is whether the evidence is factually sufficient. The standard by which we make that determination is found in *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) to which we refer the parties.

Although Reyna believed that Barron and appellant had been arguing, no one else reported the same, and Reyna's testimony was based only on "how they were all moving around." There was also nothing to indicate that he had told that fact to anyone before trial. Moreover, no explanation was provided for any alleged argument because there was no evidence that appellant and Barron knew each other prior to that evening. The medical examiner was also unable to positively state that the assailant had cut his hand during the stabbing, and there was no evidence that appellant possessed a knife.

As to the fellow inmates who overheard appellant say that he had thrown one of his shirts away, appellant was wearing two shirts at the time he was picked up by police, and several witnesses testified he was dressed the same when they saw him later that night at the police station as he had been at Barron's house. Some of the visitors at Barron's house that evening were also inconsistent as to the description of appellant and the timing of certain events.

While the evidence of appellant's presence at Barron's home and the cut on his hand would not be enough by itself to sustain his conviction, it is some evidence from which an inference may be drawn and, when combined with the alleged confession

4

reported by appellant's fellow inmates, we cannot say that a rational jury could not have found appellant guilty. Admittedly, the credibility of the inmates who reported the confession was attacked. However, they knew that the knife handle had been broken off, and there was no evidence of any motive or gain they achieved by their testimony. So, it was for the jury to determine their credibility and assign weight to their testimony. In sum, while the evidence of appellant's guilt is certainly not overwhelming, it is not so completely lacking so as to undermine our confidence in the proceeding.

Finally, we note appellant's reference to *Zimmerman v. State*, 753 S.W.2d 234 (Tex. App.–Amarillo 1988, no pet.) and *Skelton v. State*, 795 S.W.2d 162 (Tex. Crim. App. 1989). Neither involved fellow inmates overhearing the accused discuss how he purportedly disposed of various incriminating items. That circumstance appears here, however. And, if their testimony is believed (something the jury opted to do), that evidence directly ties appellant to the murder.

The evidence of appellant's guilt is both legally and factually sufficient, and the judgment is affirmed.

Brian Quinn
Chief Justice

Do not publish.

5